NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 16-4367
_____

ONESIMUS GAYEMEN,
                              Appellant

v.

THE SCHOOL DISTRICT OF THE CITY OF ALLENTOWN;
SHAWNDELL CANNON; GREGORY GOODIN;
JACOB FERNANDEZ; JAHMEEN QUICK

_____


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 5-14-cv-01518
Magistrate Judge: Henry S. Perkin

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 25, 2017

Before: SMITH, *Chief Judge*, McKEE, and RESTREPO, *Circuit Judges*

(Opinion Filed: October 12, 2017)
_____

OPINION*
_____


SMITH, *Chief Judge.*

---

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

Plaintiff Onesimus Gayemen alleges that the School District of the City of Allentown violated his constitutional right to due process when it failed to protect him from gang-related violence at school. The District Court granted summary judgment in favor of defendant on the ground that Gayemen failed to substantiate each element of the state-created-danger doctrine. We will affirm.

I

In March 2011, Onesimus Gayemen became a student at William Allen High School. On March 30, he was attacked by Shawndell Cannon, Gregory Goodin, Jacob Fernandez, and Jahmeen Quick, who were also students at the school. According to Gayemen, the attack was one of many gang-related incidents at Allen, which the school administration knew about but failed to adequately address. Gayemen relies primarily on a statement by Assistant Principal James Dotterer, who investigated student offenders and submitted a list of the "ten worst student offenders" to the administration (those students are not identified, and it is not clear from the record that any of Gayemen's attackers were on the list). Dotterer was told that the students identified would be transferred into alternative education programs, but they never were.

Gayemen sued the School District and his individual attackers. Following a non-jury trial, the District Court entered judgment against Cannon, Goodin, and Quick for $75,000 in compensatory damages and $15,000 in punitive damages. The

District Court also assessed $800 in restitution against Fernandez, which the District Court found that Fernandez fully satisfied. The only issue on appeal is whether the District Court properly granted summary judgment in favor of the School District on Gayemen's claim of state-created danger.

## II[1]

We conclude that summary judgment was appropriate because Gayemen has failed to demonstrate any affirmative exercise of state authority that increased his exposure to danger.

Gayemen asserts a claim under 42 U.S.C. § 1983 that the School District violated his constitutional right to due process. But as the Supreme Court has explained, "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). Rather, its purpose is "to protect the people *from the State*, not to ensure that the State protect[s] [the people] from each other." *Id.* at 196 (emphasis added). "As a general matter, . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197.

We and other circuits have developed a "state-created danger" exception to

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.

that general rule. A claim of state-created danger has four elements:

(1) the harm ultimately caused was foreseeable and fairly direct;

(2) a state actor acted with a degree of culpability that shocks the conscience;

(3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

(4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright v. Westmoreland Cty.*, 443 F.3d 276, 281 (3d Cir. 2006) (internal citations and quotation marks omitted).

"We begin with the fourth element," the affirmative-act requirement, "as it is typically the most contested." *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 242 (3d Cir. 2016). That requirement ensures that defendants are only liable for "misuse of state authority, rather than a failure to use it." *Id.* (quoting *Bright*, 443 F.3d at 282). Because there is "inherent difficulty in drawing a line between an affirmative act and a failure to act," we have found it "useful" to evaluate "whether the state actor's exercise of authority resulted in a departure from [the] status quo." *Id.* at 242–43.

As the District Court correctly held, Gayemen fails that element. Gayemen primarily relies on statements by Assistant Principal Dotterer, who "tells of having

4

continuing problems with gang related violence" and "exposes that the entire issue was ignored and none of these students were removed from the school." Appellant Br. 19. As Gayemen himself puts it, he alleges "the failure of the School District to take appropriate steps to address the student affiliated gang violence." *Id.* at 20. But that is just what the Due Process Clause does not protect. The allegation does not entail any "departure from [the] status quo," *L.R.*, 836 F.3d at 243, and thus asserts a mere "failure to use" state authority, *id.* at 242 (quoting *Bright*, 443 F.3d at 282); *see Morrow v. Balaski*, 719 F.3d 160, 178 (3d Cir. 2013) (en banc), *as amended* (June 14, 2013) (holding that the failure to expel a bully was not an affirmative act); *D.R. ex rel. L.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1374 (3d Cir. 1992) (en banc) (no liability for school's failure to investigate and stop instances of sexual abuse). Gayemen has not identified any action that "rendered [him] more vulnerable to danger than had the state not acted at all." *Morrow*, 719 F.3d at 178 (quoting *Bright*, 443 F.3d at 281); *cf. L.R.*, 836 F.3d at 244 (finding an affirmative act where a teacher released a kindergarten student into the custody of an unidentified adult).

Gayemen attempts to recharacterize the School District's inaction as an affirmative effort to "ignore[], bur[y], and conceal[] Dotterer's reports of prior violent acts." Appellant Br. 20. But other than the fact that the School District took no action with regard to Dotterer's investigation, Gayemen cites no evidence of

5

affirmative concealment.[2] The School District's failure to remove students from the school simply does not constitute an affirmative act, even if school policy required their removal. *See Morrow*, 719 F.3d at 178 ("[W]e decline to hold that a school's alleged failure to enforce a disciplinary policy is equivalent to an affirmative act under the circumstances here."). This Court has repeatedly rejected similar efforts to recharacterize inaction as action. *See, e.g.*, *id.* at 179 ("[M]erely restating the Defendants' inaction as an affirmative failure to act does not alter the passive nature of the alleged conduct."); *Stanford v. Stiles*, 456 F.3d 298, 312 (3d Cir. 2006) (per curiam); *see also Morrow*, 719 F.3d at 178 (noting that, if failing to expel a student counted as an affirmative act, "the state-created danger *exception* would swallow the rule" and "[s]chools would always be liable . . . for any injury that could be linked to either action or inaction").

Finally, Gayemen argues that the School District's inaction regarding violence

---

[2] The only claim of affirmative concealment identified by the District Court involved a security officer, Michael Witt, who was allegedly instructed not to report violent incidents. *Gayemen v. Sch. Dist. of the City of Allentown*, No. 14-CV-1518, 2016 WL 3014896, at *11 n.8 (E.D. Pa. May 26, 2016). But after a careful review of the record, the District Court concluded that "[t]here is no evidence that reports of assaults were concealed or the facts were diluted." *Id.* The District Court further noted that "it is admitted by Gayemen that Witt had no prior knowledge of any of the students involved in this assault." *Id.* Gayemen did not make the argument regarding Witt "with specificity" in the District Court, *id.*, and he does not make it at all in this Court. But even if he had, we see no error in the District Court's analysis or review of the record.

"may have" emboldened the perpetrators, making them "confident in their ability to conduct their attacks in the open, and in front of any passersby." Appellant Br. 21. But as we have held, that allegation does not convert the School District's inaction into an affirmative act. *See Bright*, 443 F.3d at 284 (rejecting the argument that an "inexplicable delay emboldened" a perpetrator because "what is alleged to have created a danger was the failure of the defendants to utilize their state authority, not their utilization of it").

## III

Having concluded that Gayemen's claim fails the fourth element of the state-created-danger doctrine, we need not address the remaining elements.[3] *See id.* at 283. We will therefore affirm.

---

[3] We agree with the District Court that Gayemen's *Monell* claim fails because there was no underlying constitutional violation.